UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMMANUEL HOFF,
Petitioner,

v.

DAVID WESLING, Boston Field Office Director, U.S. Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security, U.S. Department of Homeland Security; DAREN MARGOLIN, Director, Executive Office for Immigration Review, U.S. Department of Justice; TODD BLANCHE, Attorney General, U.S. Department of Justice,
Respondents.

C.A. No. 26-cv-714-MRD-PAS

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

Petitioner Hoff filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking a bond hearing or release from custody after he was detained by Immigration and Customs Enforcement ("ICE") on September 30, 2026. *See generally* ECF No. 1. On October 5, 2026, Respondents conceded that Petitioner was entitled to a bond hearing before an Immigration Judge ("IJ") and notified the Court that Petitioner's bond (or custody redetermination) hearing would be held on October 13, 2026, in Chelmsford Immigration Court. ECF No. 5; *see* ECF 5-4 (Notice

of Custody Redetermination Hearing in Immigration Proceedings). That bond hearing was held and the IJ denied bond on the basis that the Government had met its burden of showing by a preponderance of the evidence that Petitioner is a flight risk. ECF No. 10-4 at 6–7. The next day, October 14, 2026, Petitioner filed a Motion to Enforce *Hernandez-Lara* Bond Standard, wherein he argues that the hearing and IJ's decision failed to comport with the requirements of due process. *See generally* ECF No. 10-1. For the reasons discussed below, the Court agrees and GRANTS the Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner Hoff is a Liberian man who entered the United States in 2019 after being approved for a K-1 fiancé visa. ECF No. 1 ¶¶ 1, 25; ECF No. 10-2 at 8, 14. He timely applied for asylum based on his expression of political opinions as a journalist in Liberia which resulted in him being "beaten, detained, and threatened by [] police on a number of occasions." ECF No. 1 ¶ 1; ECF No. 10-1 at 6; ECF No. 10-2 at 120. His asylum application has been pending with the Immigration Court for over five years. ECF No. 10-1 at 6.

Along with his asylum application, the Petitioner's wife, who is a United States Citizen, applied for an I-130 ("Petition for Alien Relative") on his behalf. ECF No. 1 ¶¶ 2, 8; ECF No. 10-2 at 115. That application was approved on March 7, 2024. *Id.* Petitioner and his wife, who have been married for four years, have a three-year-old daughter together and are expecting their second child to be born in November 2026. ECF No. 10-2 at 11, 23–24.

When Petitioner arrived in 2019, he began having contact with law enforcement. In 2019, he was twice arrested by Providence Police for domestic violence related conduct and in 2026 he was convicted of keeping or maintaining a common nuisance. ECF No. 10-3 at 4–8, 19–23. The 2026 conviction stemmed from charges with an offense date of November 7, 2020. *Id.* These charges involved Petitioner and his ex-wife, ECF No. 10-2 at 8–11, but he has no criminal history since their divorce in 2021.[1] *Id.* at 146–48.

Fast forward to September 30, 2026. ICE arrested Petitioner outside of his home as he was leaving for work. ECF No. 1 ¶ 1. He immediately requested a custody redetermination hearing, which was scheduled for October 13, 2026 in the Chelmsford Immigration Court. ECF No. 1 ¶ 28; ECF 5-4. At the hearing, the Government submitted an EARM summary printout, police reports, one criminal complaint from Petitioner's criminal cases, a 2019 Immigration Court bond order, and a docket printout of his criminal case. ECF No. 10-3 at 2–3. Meanwhile, Petitioner submitted over 50 documents which are categorized as follows: (1) Petitioner's personal documents, (2) documents about Petitioner's U.S. citizen children and spouse, (3) support letters, (4) letters about Petitioner's work as a pastor at Winners Chapel International, (5) documents about Petitioner's employment and taxes, (6) documents about his applications for relief, (7) documents about his compliance with supervision requirements, and (8) documents about his criminal

[1] Petitioner's K1 fiancé visa was through his ex-wife, and his I-130 is sponsored by his current wife.

charges. ECF No. 10-2 at 3–6. The IJ found that DHS failed to meet its burden of proving that Petitioner is a danger to the community by clear and convincing evidence. ECF No. 10-4 at 6–7. On risk of flight, the IJ made the following decision:

> The court next moves to flight. The court considers several factors in flight: fixed address, length of residence, family ties, employment history, immigration record, attempts to escape, prior failures to appear, criminal record, disregard for immigration laws, prospective relief, sponsorship. The court balances the equities, that is, the positives and negatives of each of these factors. Included in the flight risk is criminal record that does [sic] and how it may affect likelihood of flight. The court has reviewed the record. The court recognizes in at least one instance a child was present, child was interviewed referred to child services. Another incident involved surgery at Roger Williams. Those are independent corroborating facts. The court does balance on the other side many very positive factors that the court clearly sees in the thorough submission by Respondent's counsel. So, here in with regard to flight, the court makes the following finding: the court finds that DHS has met its burden by a preponderance of the evidence that the respondent is a flight risk. The court states there are no alternatives to detention that would ameliorate such risk.

*Id.* The IJ's order noted the following:

> The Court has considered the relevant factors identified in *Matter of Guerra*, and the totality of the circumstances. Consistent with *Hernandez-Lara v. Lyons*, the Court finds that DHS has not established, by clear and convincing evidence, that the Respondent presents a danger to the community. However, DHS has established, by a preponderance of the evidence, that the Respondent presents a risk of flight. Considering the factors discussed on the record, individually and cumulatively, the Court finds that the Respondent's risk of flight warrants continued detention without bond. Accordingly, the Respondent's request for release on bond is denied.

ECF No. 11-1 at 1. Based on this decision, Petitioner was ordered to remain detained at the Wyatt Detention Center in Central Falls, Rhode Island throughout the pendency of his immigration proceedings.

## II. STANDARD OF REVIEW

District courts have limited authority to review an IJ's custody redetermination. *Delmyr v. Moniz*, 26-cv-13833-AK, 2026 WL 3025905, at *2 (D. Mass. Oct. 8, 2026). Under 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." This said, the First Circuit has explained that, at an immigration bond hearing, the government must establish "that the non citizen is either (1) dangerous by clear and convincing evidence or (2) a risk of flight by a preponderance of the evidence." *Delmyr v. Moniz*, 26-cv-13833-AK, 2026 WL 3025905, at *3 (D. Mass. Oct. 8, 2026) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)). As to flight (which is the relevant issue before this Court), that determination "requires an IJ to consider multiple factors as set out in *Matter of Guerra* and thus the IJ's application of flight risk to [a] [p]etitioner's facts is reviewable." *Id.* (citing *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024)). The IJ's application of the factors to a petitioner's case should be "reasonable." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

## III. DISCUSSION

Petitioner asserts that he was detained in violation of 8 U.S.C. § 1226(a) and the Fifth Amendment's Due Process Clause. ECF No. 1 ¶¶ 60–66. The Petition asks the Court to order his immediate release and to order that the Immigration Court hold a "bond hearing with the strong procedural protections required under

*Hernandez-Lara*."[2] *Id.* at 16. Respondents conceded that Petitioner was detained under § 1226(a) and scheduled a hearing before an IJ. *See* ECF No. 5-4. The Court ultimately concludes that the hearing was constitutionally inadequate because the Court finds that the IJ failed to apply the demands of *Hernandez-Lara*.

**A. This Court Has Subject-Matter Jurisdiction**

To start, this Court concludes that it has jurisdiction over this matter because "Petitioner's challenge is directed at the legality and constitutionality of the IJ's process, and review is, therefore, not barred by Section 1226(e)." *Delmyr*, 2026 WL 3025905, at *1. This is consistent with the approach of several other courts in this Circuit. *See, e.g.*, *id.*; *Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 WL 884639, at *1 (D. Mass. Mar. 31 2026); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 123–24 (D.R.I. Dec. 3, 2025). It is clear to this Court that Petitioner is challenging the constitutional adequacy of the bond hearing and not simply the IJ's discretionary decision. ECF No. 10-1 at 8.

**B. Petitioner's Bond Hearing Was Legally Deficient**

The Court here finds that Petitioner did not receive a constitutionally adequate bond hearing as demanded by the First Circuit and the Board of Immigration Appeals ("BIA"). To reiterate, *Hernandez-Lara v. Lyons* requires the government to establish "the burden of proving [] flight risk by a preponderance of the evidence] in order to continue detaining a noncitizen under section 1226(a)." 10 F.4th at 39. To determine

[2] The Court Ordered Petitioner's release from custody on October 15, 2026. This Order follows his release from custody.

whether the Government has met its burden, the IJ is to consider the factors outlined in *Matter of Guerra* and then "determine whether a[] [noncitizen] merits release[.]" 24 I & N. Dec. at 40. That Court explained the following:

> These factors may include any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.*

In this case, the IJ merely recited the standard but the articulated decision to deny bond reflects an obvious failure to fairly consider the factors, weigh all the evidence submitted, and consider alternatives to detention. This Court reviewed the unofficial transcript of the bond hearing and notes that the IJ *only* considered Petitioner's criminal record and determined that there were corroborating facts for the charges. *See* ECF No. 10-4. The IJ's only comment on the Petitioner's voluminous (over 150 pages) evidence was acknowledging the "many very positive factors." *Id.* at 6. As Judge Kelley and other colleagues have noted, "[a]n IJ may not simply ignore substantial testimonial and documentary proof" when considering whether to release a noncitizen on bond. *Delmyr*, 2026 WL 3025905, at *4 (citation and internal quotations omitted); *see Garcia v. Hyde*, 817 F. Supp. 3d 112, 120 (D.R.I. Dec. 3, 2025). The IJ's decision fails to address, either orally or in writing, why

seemingly highly probative evidence was not credible or reliable, including the following: Petitioner's declaration (ECF No 10-2 at 8–12), letters from his defense attorneys noting his consistent appearance at court proceedings (ECF No. 10-2 at 130–33), his wife's letter and medical records (ECF No. 10-2 at 20–24), eighteen letters of support from friends and family (ECF No. 10-2 at 44–89), his five years of tax returns and employment history (ECF No. 10-2 at 91–113), his approved I-130 (ECF No. 10-2 at 115), or the many other documents submitted on his behalf. Due process requires more than a statement that the Petitioner's evidence was considered, and the IJ should have explained *why* none of the submissions were credible or persuasive.

Moreover, the IJ should have considered alternatives to detention or conditions of release that would reasonably assure Petitioner's appearance at future Immigration Court proceedings. *See Lopez v. Wesling*, No. 26-cv-00457-MSM-PAS, 2026 WL 2957941, at *4 (D.R.I. Oct. 1, 2026) ("An IJ must consider alternatives to detention as part of their assessment of flight risk at bond hearings."); *Higiro v. Nessinger*, No. 26-CV-105-JJM-AEM, 2026 WL 710297, at *7 (D.R.I. Mar. 13, 2026); *Doe v. Tompkins*, No. CV 18-12266-PBS, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), *aff'd*, 11 F.4th 1 (1st Cir. 2021) ("The immigration court shall properly allocate the burden of proof and consider alternative methods to ensure the safety of the community and Doe's future appearances like GPS monitoring."). A blanket statement that "there are no alternatives to detention that would ameliorate such risk[,]" ECF No. 10-4 at 6–7, is not a meaningful consideration of alternatives.

The IJ's decision lacked specificity, legal analysis, or a discussion of the persuasiveness or reliability of the swath of evidence submitted by the Petitioner. Thus, the bond hearing failed to comport with the strictures demanded by the Due Process Clause.

### C. The Proper Remedy is Release

As explained by Judge Kelley, "[w]here a petitioner does not pose a danger to the community and is unlawfully determined to be a flight risk, courts have regularly ordered immediate release." *Delmyr*, 2026 WL 3025905, at *5 (citing *Garcia*, 817 F. Supp. 3d at 131). This Court has followed suit and ordered Petitioner released. Because Petitioner is released and the Court declines to order another bond hearing, the Petitioner's Motion to Enforce is properly denied as moot.

## IV. CONCLUSION

Based on the above, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES AS MOOT the Motion to Enforce (ECF No. 10-1).

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

10/22/2026